### In re BERKEBILE.

(District Court, W. D. New York. February 24, 1905.)

#### No. 1,746.

ASSIGNMENT—ACCEPTANCE—EFFECT—LIABILITY OF ASSIGNEE.

Where a husband, who had entered into building contracts, executed and recorded assignments of the same to his wife, and thereafter proceeded with the work and purchased materials on credit, although the wife had no knowledge of the assignments at the time, her subsequent action, in executing assignments of sums due or to become due under the contracts to materialmen, was a ratification of the same which made her husband her agent from their date, and rendered her liable for the indebtedness contracted in the execution of the contracts, and the assignments by her preferences, which constituted acts of bankruptcy;

the indebtedness being such that she was insolvent at the time they were executed.

In Bankruptcy. On involuntary petition.

The following is the substantial part of the report of William H. Hotchkiss, to whom the petition was referred as special master:

"There was some discussion during the progress of this reference as to a defect in the original involuntary petition, in that it neither alleged affirmatively the business of the bankrupt nor negatives any of the exceptions stated in section 4b of the act (Bankr. Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]). At the close of the creditors' case, the bankrupt moved to dismiss, on this, among other grounds, and decision was reserved. The alleged bankrupt failed to demur, answered on the merits, and appeared by counsel and cross-examined the creditors' witnesses. She cannot now demur. It is not necessary to rule that her motion to dismiss on this ground is not a challenge to the jurisdiction. Courts must consider questions involving jurisdiction, even if overlooked or waived by the parties. Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173, 32 L. Ed. 543.

"The question, therefore, arises whether, the petition being thus defective, the court has jurisdiction. As I view it, that depends on what is meant by jurisdiction. Thus, following the rule of pleading stated in Ledbetter v. U. S., 170 U. S. 606, 611, 18 Sup. Ct. 774, 42 L. Ed. 1162, it has been repeatedly held that, where such a denial of the statutory exceptions is omitted from the pleading, there can be no adjudication, and demurrers on that ground have been frequently sustained. In re Bellah (D. C.) 116 Fed. 69; In re Pilger (D. C.) 118 Fed. 206; In re Mero (D. C.) 128 Fed. 630; In re Callison (D. C.) 130 Fed. 987. All, or nearly all, of these cases, however, hold that the defect is not so far fatal as to prevent amendment. An earlier case (In re Taylor, 102 Fed. 728, 42 C. C. A. 1) is much to the same effect, though silent as to the right to amend. A late case, however (In re Stein [D. C.] 130 Fed. 377), holds that a similar defect cannot be cured by amendment. If this is the rule, the present proceeding must fall for want of jurisdiction. However, that the Stein Case does not voice the correct view seems clear. It has been well held (In re Columbia Real Estate Co. [D. C.] 101 Fed. 965, 970) that District Courts sitting in bankruptcy are not inferior courts, in the sense that jurisdiction must necessarily appear on the face of the record (citing cases). Indeed, the true distinction is indicated in Re Brett (D. C.) 130 Fed. 981, 983, and the cases there cited. The defect is jurisdictional, but only so far as it precludes the court from making an adjudication. Jurisdiction of the subject-matter is conferred by the statute itself, of the person by service of process and appearance. The court can therefore permit an amendment where the facts, as proven in this case, show that this debtor is neither a wage earner nor a farmer. A bankruptcy petition might, it is true, be so grossly defective in jurisdictional allegations that, by refusing to permit amendments, jurisdiction would be declined. That, however—where jurisdiction of the person and the subject-matter exists—is always for the court to say. On this phase of the case, therefore, I report that this petition is defective, in that it does not assert either the occupation of the alleged bankrupt or that she is not a wage earner or farmer; and that, on that ground, it should be dismissed, unless the creditors shall seasonably apply for and obtain an amendment as above indicated. The granting of an order of intervention to creditors who allege that the debtor is engaged principally in trading and mercantile pursuits is not, in my judgment, such an amendment.

"In the event that the amendment shall be granted, the facts as shown on this reference are as follows; the more salient can best be stated chronologically:

"April 21, 1903: Owen E. Berkebile, the alleged bankrupt's husband, entered into a written contract with the Reward Development Company for the construction of a house at No. 83 Altruria street, Buffalo; the contract price being $2,308.

"May 21, 1903: Owen E. Berkebile entered into a similar contract with the same company for the construction of a house at No. 88 Altruria street; contract price $2,350.

"June 22, 1903: Owen E. Berkebile entered into a contract with James P. Sweeney for the construction of two houses on Fulton and Perry streets, Buffalo; contract price, $5,103.

"June 30, 1903: Owen E. Berkebile, by separate instruments, duly acknowledged, which were annexed to the original contracts, and, as so annexed, were apparently filed in Erie county clerk's office on July 1, 1903, assigned the two Altruria street contracts to his wife, Eppie B. Berkebile. Such assignments were not delivered to her, nor did she know of their existence until some time after.

"July 6, 1903: Owen E. Berkebile, by an instrument, duly acknowledged, which was then or later annexed to the original contract, and, as so annexed, was apparently filed in Erie county clerk's office July 20, 1903, assigned the Sweeney contract to Eppie B. Berkebile. Such assignment was not delivered to her, nor did she know of its existence until some time after.

"November 27, 1903: 'Eppie B. Berkebile, contractor,' and Owen E. Berkebile assigned to Bernard Brady the sum of $1,137.69, due or to become due 'on my contracts' for the Altruria street houses; and Brady, on the same day, filed a notice of such assignment in said clerk's office, specifying that the same was given for lumber furnished in the construction of such houses. This is the alleged act of bankruptcy.

"November 28, 1903: Eppie B. Berkebile and Owen E. Berkebile assigned to the United States Gypsum Company, one of the intervening creditors, the sum of $132.13, due on the same contracts, and such assignment seems to have been duly filed in such clerk's office on December 1, 1903.

"December 2, 1903: Eppie B. Berkebile assigned to Schreier & Voisard, by two instruments, each acknowledged before Harry N. Kraft, a commissioner of deeds, the sum of $414.34, due respectively on the Altruria street contracts.

"January 10, 1904: Eppie B. Berkebile and Owen E. Berkebile assigned to William Honsberger the sum of $31.30, due on the same contracts, and such assignment seems to have been duly filed in such clerk's office January 14, 1904.

"January 14, 1904: Eppie B. Berkebile and Owen E. Berkebile assigned to Bernard Brady, by two instruments, each acknowledged before Judson S. Rumsey, a commissioner of deeds, the sum of $124.15 and $153.26, deposited by the Reward Development Company to discharge alleged and avoid liens filed against the Altruria street houses by one August Burasch, which assignments seem to have been filed in such clerk's office January 15, 1904.

"March 25, 1904: Involuntary petition filed by August Burasch, Joseph Meyer, and Schreier & Voisard.

"April 5, 1904: Answer of alleged bankrupt filed.

"April 11, 1904: Order of reference to the undersigned.

"June 30, 1904: Intervening petition of William F. Koch, Arthur Brotherston, and United States Gypsum Company filed.

"November 25, 1904: Reference concluded.

"The answer raises several issues: (1) Whether the petitioning and, as a consequence of the order of intervention, the intervening creditors, are creditors of Eppie B. Berkebile in $500, or in any amount, the alleged bankrupt claiming that her husband, Owen E. Berkebile, and not herself, is the debtor; (2) whether the alleged bankrupt committed an act of bankruptcy; and (3) whether she is insolvent.

"All these questions turn largely on the effect of the assignments of these three building contracts to her by her husband in June and July, 1903. She denies knowledge of them, asserts that she is not a contractor or in business in any way, and that, as to the numerous assignments bearing her signature, she signed them without reading them, and never had any dealings with the various materialmen mentioned therein; in fact, knows practically nothing of the various transactions. On the other hand, Mr.

Kraft, a reputable attorney, testifies that he took her acknowledgment of two of the papers, and, before doing so, went over the facts recited therein. It appears also that, at the time the husband assigned the building contract to the wife, but a small portion of the contract price had been paid, and relatively but little done on the various buildings; and that, after the date of such transfer, the husband went on as before, buying materials on credit, making payments, and completing the buildings. It even appears that he at some time withdrew from the county clerk's office two of the building contracts with assignments attached. None of the petitioning or intervening creditors seemed to have known that the wife was the contractor until about the time of the alleged act of bankruptcy. There is much evidence pro and con intended to fix the character of those transfers from husband to wife. That they were transfers I do not doubt. Afterward the husband became a mere agent. When he purchased goods of these creditors he did so as agent for his wife. As far as the creditors knew, he had authority so to do, and the well-established doctrine of apparent authority—these creditors having suffered loss through the acts of the agent—applies and makes the alleged bankrupt liable for such acts. Nor can she escape the liability by denial of knowledge of the agency. If she had signed no papers her denial would have great force. But she signed many. By doing so, she confirmed the impression these creditors were warranted in forming. She declared, in substance, that what they had reason to believe from appearances, i. e., that her husband was her representative in these transactions, was true. She is therefore liable to them. She is their debtor.

"Further, in the final analysis here, the issue is between Bernard Brady, one of the creditors, and all the others. The bankruptcy law has as one of its chief objects the prevention of preferences. In the balancing of equities, granted that the alleged bankrupt was ignorant of the use made of her name and also that all the creditors, including, so far as the record shows, the creditor Brady, were careless as to the real party to whom credit was extended, this purpose of the law will be best accomplished by holding her the contractor from the time of the husband's transfers, and therefore, after that time, the owner of the moneys arising from the contracts. If so, that she was insolvent on November 27, 1903, and on March 25, 1904, seems to follow. There is some evidence to show that, if the Reward Development Company had paid for certain extras, there would have been enough to pay all the creditors; but it does not appear clearly that this contention was more than a hope. Nor does it satisfactorily appear whether the adjustment of the difference between the company and the contractor, resulting in the deposit of $794.20 in the county clerk's office, as in full settlement of the Altruria street contracts, was made before or after November 27, 1903. Indeed, I think it a fair inference from the testimony that the only assets of the bankrupt on November 27, 1903, were the moneys unpaid on the Altruria street contracts, now appearing to be $1,071.61, and that at that time she owed Brady alone $1,137.69, and other creditors upward of $800. If so, she was clearly insolvent, and that condition continued to March 25, 1904; and I so report.

"If she, and not her husband, was the contractor, as already held, the facts above reported warrant the conclusion that, when, on November 27, 1903, she assigned to Brady $1,137.69 of the Altruria street contracts, she transferred, while insolvent, a portion, if not all, of her property to one of her creditors, and this necessarily; she being chargeable with the consequence of her acts, with intent to prefer such creditor over other creditors. Again, were the record clear as to her right to payments on those contracts in sufficient amount to pay all, the other conclusion might follow. But she has not met the burden. And the conclusion above stated is the only fair one in the circumstances. I report, therefore, that the alleged bankrupt committed the act of bankruptcy defined in section 3a, subd. 2 (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), on November 27, 1903. That the petitioning creditors had debts in excess of $500 above securities follows from the fact that, after the transfers from her husband, she was the contractor. It is true that Schreier & Voisard, as the facts appear on this

reference, seem to be her husband's, and not her, creditors, and that, were it not for the intervening petition, this proceeding might fall. It does not yet appear that the alleged bankrupt has more than 12 creditors. But, under the cases previously cited, the petition being in this particular regular on its face, the elimination of one petitioning creditor, by proof brought out at the trial, may be cured by another creditor intervening. Here three have intervened, making five in all, and their claims for goods furnished after the wife became the contractor clearly exceed $500. None of them is secured, the Burasch liens being concededly void, and the Gypsum Company's assignment being worthless, whether or not bankruptcy is adjudged. I report, therefore, that the petition is supported by provable claims against the alleged bankrupt in excess of $500 above all securities held.

"There is little dispute as to the facts controlling on the court's decision. Many of them are stipulated. Several of the exhibits have been read into the record; of others, copies are furnished. * * * It follows from what goes before, that the motion made by the alleged bankrupt at the opening of her case on the hearing of November 11, 1904, should be denied on each and all of the grounds given, and that she should have an exception to such ruling. The alleged bankrupt's objection to all evidence tending to show that she is neither a wage earner nor a farmer, made at the same hearing, is also overruled, and an exception given accordingly. I do, therefore, recommend that the petitioning and intervening creditors, except Schreier & Voisard, have reasonable opportunity to remedy, by amendment, the defect in the petition previously discussed, and that, if such amendment is granted, Eppie B. Berkebile be adjudged a bankrupt."

Thomas C. Burke, for appellant.
Walter S. Jenkins and William F. Wierling, for respondents.

HAZEL, District Judge. A fair presumption based upon the evidence is justifiable, I think, that the contract of the husband to construct the houses mentioned was the contract of the wife. Ratification of the acts by the principal implies a knowledge of the circumstances upon which the liability is predicated. Such knowledge may be inferred from Mrs. Berkebile's acts in making assignments of moneys due or to become due upon the contract. She was not ignorant of her rights and liabilities under the contract. She became a known principal by her acquiescence and acts; and she induced the belief that prior thereto her husband acted as her duly authorized agent in the construction of the buildings specified in the building contract without disclosing Mrs. Berkebile's interest therein as principal. I think the bankrupt, because of the facts, is estopped to deny the Brady indebtedness.

The preliminary objection that the petition is defective having been waived, the report is affirmed.